35-08/MEU/SL
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
AYRES SHIPPING INC.
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Michael E. Unger (MU 0045)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
AYRES SHIPPING INC.,

         Plaintiff,

  -against-

PAKRI TANKERS,

         Defendant.
------------------------------------------------------------------x

08 Civ _____ (____)

**VERIFIED COMPLAINT**

Plaintiff, AYRES SHIPPING INC. (hereinafter "AYRES") for its Verified Complaint against Defendant PAKRI TANKERS (hereinafter "PAKRI") alleges upon information and belief as follows:

  1.  This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract of charter party. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333 and the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331 in that the action arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

  2.  At all times material hereto, Plaintiff AYRES was and still is a foreign business

NYDOCS1/297663.1

entity duly organized and existing under the laws of a foreign country with an address at 80 Broad Street, Monrovia, Liberia.

3.     At all times relevant hereto, Defendant PAKRI was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at Toom-Ruutli 12-10, Tallinn 10130, Estonia.

4.     On or about January 19, 2007, Defendant PAKRI, as charterer, entered into a maritime contract of charter party with Plaintiff AYRES, as owner of the M/T FORTUNE, for the charter of said vessel for a period of two years plus or minus thirty (30) days in charterer's option at an agreed daily hire rate of $13,000 per day.

5.     On May 25, 2007, Plaintiff AYRES duly delivered the M/T FORTUNE into the service of Defendant PAKRI and performed all of its obligations under the charter.

6.     Six months later, in November 2007, Defendant PAKRI commissioned a surveyor to inspect the vessel. The unqualified and inexperienced surveyor produced a report which falsely denoted several alleged defects or deficiencies with the vessel.

7.     Shortly prior to the inspection by Defendant PAKRI's surveyor, the vessel had passed the CDI [Chemical Distribution Institute] inspection, which is the most rigorous independent trading inspection for vessels of this kind. Plaintiff AYRES has also recently had the vessel inspected by expert engineer Mr Lindsay Gordon of Gordon Marine, London, who has concluded there is no substance to the findings by Defendant PAKRI's surveyor.

8.     On the basis of its surveyor's report, Defendant PAKRI falsely alleged that Plaintiff AYRES has failed to exercise due diligence to maintain or restore the vessel as required under the charter party.

9. In repudiatory breach of the charter, on December 27, 2007, Defendant PAKRI notified Plaintiff AYRES of its intention to redeliver the vessel prematurely, and refused and/or otherwise failed to pay hire for use of the vessel after that date.

10. On December 31, 2007, Plaintiff AYRES accepted Defendant PAKRI's repudiatory breach and terminated the charter without prejudice to AYRES' right to claim damages.

11. Plaintiff AYRES has thereafter attempted to mitigate its loss by searching for a substitute fixture. The best that AYRES has been able to do so far by way of alternative employment for M/T FORTUNE is a charter party dated 17 January 2008 ("the new charter") for a single voyage from Copenhagen to 1-2 places offshore West Africa with a cargo of minimum 10,000 mts of clean petroleum products at a freight of US$51.50 per mt and with a laycan of 25-27 January. The time Charter equivalent of this fixture is estimated by AYRES to be about US$10,750 per day without however taking into account anticipated waiting time of about 24 days, which will produce a true rate of only about US$4,500 per day. Therefore, AYRES has so far suffered the following losses:

i. Period from 28 December, 2007 (till when hire was paid by Pakri) until 25 January, 2008 (commencement of laycan under the new charter) resulting in a loss of earnings in the amount of $364,000 (28 days x $13,000 hire/day under terminated charter);

ii. Assuming no delays at West African discharge locations, the new charter will last for about 50 days, which will mean that the vessel will again be looking for employment as from about mid- March.

Over this 50-day period, the vessel would have earned from Pakri the sum of US$650,000. The earnings from the new charter will be only US$515,000, producing a loss of about US$135,000.

12. Plaintiff AYRES is advised by chartering brokers that the market rate for vessels of this type is now $10,500 per day pro rata, and is unlikely to improve by the end of March 2008. This results in a projected loss of earnings in the amount of US$1,050,000 (14 months remaining on terminated charter x 30 days x ($13,000 hire/day under terminated charter - $10,500 hire/day under substitute charter)).

13. Also in breach of the charter, Defendant PAKRI failed and/or otherwise refused to pay for bunkers that were supplied to the vessel for PAKRI's benefit in the amount of US$294,594.19 (US$ 25,000 + US$ 269,594.19). Consequently, the bunkers suppliers have now turned to and demanded payment from Plaintiff AYRES to recover for PAKRI's non-payment for the bunkers and/or could potentially do so.

14. In further breach of the charter, Defendant PAKRI has failed and/or otherwise refused to pay for the brokers' commission in the amount of $9,750, the fresh water supplied to the vessel in the amount of $880 and the tank cleaning in the amount of $1,600.

15. In all, the damages which Plaintiff AYRES has sustained as a result of the breaches by Defendant PAKRI are:

    (a)     $364,000 (lost earnings for unfixed period);
    (b)     $1,185,000 (lost earnings under substitute charters);
    (c)     $294,594.19 (bunkers supplied to vessel);
    (d)     $9,750 (brokers' commission);
    (e)     $880 (fresh water for vessel); and
    (f)     $1,600 (tank cleaning),

for a total amount of US$ **1,855,824.19** none of which has been paid by Defendant PAKRI despite due demand.

16. In further breach of the charter and notwithstanding its repudiation of the charter, based on the false allegations in its surveyor's report, PAKRI has improperly claimed reimbursement for $220,000.00 alleged off-hire and for bunkers remaining on board the vessel at redelivery after the charter was terminated.

17. In an attempt to resolve Defendant PAKRI's claims amicably and avoid the arrest of the M/T FORTUNE, Plaintiff AYRES offered to deposit the full amount of PAKRI's claims ($220,000.00) into an interest-bearing escrow account pending resolution. PAKRI has refused to accept this offer. In the circumstances where PAKRI has not proved that it has paid for the bunkers on board and, moreover, where AYRES is exposed to claims for the value of these bunkers from the original suppliers, AYRES maintains its demand for security in respect thereof.

18. The charter party provides for the application of English law and disputes between the parties to be resolved by arbitration in London, and AYRES specifically reserves its right to arbitrate the substantive matters at issue. Arbitration has been or will shortly be commenced.

19. This action is brought *inter alia* pursuant to 9 U.S.C. §8 in order to obtain security for Plaintiff AYRES' claims made or to be made in arbitration in London under English law, as agreed by the parties.

20. As a regular feature of English law and arbitration, attorneys fees are awarded to the successful litigant, along with costs, disbursements, the cost of the arbitration, and interest, all of which constitutes a part of the Plaintiff's main claim and the amount sued for herein.

21.     Plaintiff AYRES estimates, as nearly as can presently be computed, that the legal expenses and costs of prosecuting its claims in London arbitration will be $300,000. Interest anticipated to be awarded is estimated to be $275,000 (calculated at the rate of 7% per annum compounded quarterly for a period of 2 years, the estimated time for completion of the proceedings in London).

**22.**     In all, the claim for which Plaintiff AYRES sues in this action, as near as presently may be estimated, totals **$2,210,824,** no part of which has been paid by Defendant PAKRI. Plaintiff AYRES specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum appear to be insufficient to fully secure AYRES.

## Request for Rule B Relief

23.     Upon information and belief, and after investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff believes that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant PAKRI TANKERS (collectively hereinafter, "ASSETS"), including but not limited to ASSETS in its name and/or being transferred for its benefit at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein.

24.     The total amount sought to be attached pursuant to the above is **$2,210,824.**

**WHEREFORE**, Plaintiff AYRES SHIPPING INC. prays:

a. That process in due form of law according to the practice of this Court may issue against Defendant citing it to appear and answer the foregoing;

b. That if Defendant cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendant up to and including **$2,210,824** be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred from or for the benefit of Defendant PAKRI TANKERS, including but not limited to ASSETS in its name and/or being transferred for its benefit at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c. That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to the recognition and enforcement of any award entered against the Defendant in the London proceedings; and

    d.    For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
       January 22, 2008

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
AYRES SHIPPING INC.

By: _____
Michael E. Unger (MU 0045)
80 Pine Street
New York, NY 10005
(212) 425-1900

## ATTORNEY VERIFICATION

State of New York    )
                     ) ss.:
County of New York   )

      MICHAEL E. UNGER, being duly sworn, deposes and says as follows:

1.    I am an associate with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2.    The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

3.    The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

                                                              _____
                                                                Michael E. Unger

Sworn to before me this
22nd day of January 2008

_____
Notary Public

MELISSA COLFORD
Commissioner of Deeds
City of New York-No. 5-1692
Certificate Filed in New York
Commission Expires 4/1/ 08

NYDOCS1/297663.1                              9